IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ARLEY EAST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:04CV624-F |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Claimant Arley East ["East"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3) (Doc. # 1, p. 2). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision is not supported by substantial evidence and resulted, at least in part, from application of an improper legal standard. For the reasons stated herein, it is the Recommendation of the Magistrate Judge that the Commissioner's decision should be reversed and remanded for further proceedings.

## I. PROCEDURAL BACKGROUND AND FACTS

East initially petitioned for supplemental security income under Title II and Title XVI of the Social Security Act on 29 November 2001 (R. 107), claiming an onset date of 25 October 2001, when he was initially diagnosed with cirrhosis of the liver. (R. 42). By his

own account, he has been unable to work since then. (R. 42). Prior to that time, East had maintained employment most recently as a computer technician and, prior to that, driving for a security company, driving a school bus and repairing furniture. (R. 43-45). He is a 49-year-old high school graduate (R. 46), and he is a certified micro computer technician. (R. 45).

His disability arises from several conditions which East attributes to hepatitis (R. 40), cirhossis of the liver (R. 40), diabetes (R. 51), esophageal varices (R. 40), cytopenia (R. 41), depression (R. 52), attention deficit disorder (R.53), encephalopathy (R.49) and obesity. (Doc. # 14, p. 14). At one point, he underwent surgery to have a portal caval shunt inserted for the purpose of improving blood flow to his liver (R. 40, 453, 474). He experiences difficulty "process[ing] . . . information" (R. 46), chronic fatigue (R. 41), malaise (R. 41), anxiety (R. 41), confusion (R. 41), chronic abdominal pain (R. 41), bowel incontinence (R. 49), reflux (R. 41) and nausea (R. 41).

One of East's treating physicians, Dr. R. Clark Gillett, Jr. ["Gillett"], a board certified family practitioner, completed a "Physical Capacities Evaluation" (R. 526-27) and concluded that, as the result of "chronic hepatitis with cirrhosis", East -

- could sit for a total of only three hours during an eight-hour workday and only two hours at any one time without needing to move (R. 526);

- could stand for a total of two hours during an eight-hour workday and only thirty minutes at any one time (R. 526);

- needed to rest for one to three hours during an eight-hour work day;

- could lift 10 pounds occasionally and up to five pounds frequently. (R. 526);

- could use both hands for simple grasping, pushing/pulling and fine manipulation (R. 526); and

- could use both feet and legs for repetitive pushing and pulling. (R. 526).

Gillett also stated that East was moderately restricted from driving an automobile or forklift, operating moving machinery, doing work involving unprotected heights, stooping and bending at the waist, crouching, and being exposed to dust, gas, fumes, smoke, etc. (R. 527). In addition, Gillett noted that East's drowsiness, which was caused by his medication, as well as his depression and attention deficit disorder, should be taken into consideration. (R. 527).

After East's initial petition for benefits was denied (R. 85-93), he had an evidentiary hearing before an administrative law judge ["ALJ"] on 3 April 2003. (R. 179). Finding, *inter alia*, that East's testimony was not "entirely credible" and that his treating physician's opinion was not entitled to controlling weight, the ALJ issued an adverse decision on 19 December 2003 (R. 17). On 18 May 2004 the Appeals Council denied East's petition for review (R. 7), rendering the ALJ's decision the Commissioner's final determination (R. 7). This lawsuit followed on 25 June 2004.

## II. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for

3

that of the [Commissioner]." *Miles v. Chater*, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Rather, the court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F. 3d at 1400 (citations omitted).

## III.  DISCUSSION

*A.     Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* **20 C.F.R. § 416.912 (2004)**. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A) (2004)**.

The Social Security regulations provide a five-step sequential evaluation process for

---

[1] In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals has stated that:
> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

4

determining if a claimant has proven that he is disabled.  *See* **20 C.F.R. § 416.920 (1999)**. The ALJ must evaluate the claimant's case using this sequential evaluation process, ***Ambers v. Heckler***, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002).  The steps are as follows:

1. If the claimant is working or engaging in substantial gainful activity, he is not disabled.  However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

2. If the claimant does not have a severe impairment, he is not disabled.  A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment has lasted or is expected to last for more than twelve (12) months.

3. If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled.  If neither of the above conditions, when considered in association with the continuity requisite of twelve (12) months, is deemed true, the ALJ must go on to step 4 of the evaluation sequence.

4. If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and

mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

5. If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, she/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq. and/or 42 U.S.C. § 1381. If, however, it is determined that there are not a significant number of jobs the claimant can perform available in the national economy and the impairment meets the duration requirement, the claimant will be considered disabled.

*See* §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

### B. *The ALJ's Findings*

The ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. The claimant has not engaged in substantial gainful activity as of and after the alleged onset date of disability. (R. 35).

2. The claimant has the following "severe" impairments: cryptogenic (non-alcoholic) cirrhosis of the liver; hypertension; non-insulin-dependent diabetes mellitus; a history of attention deficit disorder; and a history of depression. (R. 35)

3. The claimant's impairments, either singly or in combination, do not meet or equal in severity the criteria of any impairment, or combination of impairments, specified in the listing of impairments ["listings"]. (R. 35).

4. The claimant's subjective allegations regarding pain and other symptoms and functional limitations are not entirely credible when evaluated in conjunction with the medical evidence of record as a whole. (R. 35).

5. The claimant has the residual functional capacity ["RFC"] to perform a significant range of sedentary and unskilled work. (R. 36).

6. The claimant cannot perform (return to) any of his past relevant work. (R. 36).

7. The claimant can also make a successful vocational adjustment to perform other full-time competitive work that exists in significant numbers in the regional/national economy. (R. 36).

8. The testimony of the vocational expert and the other relevant evidence of record support the conclusion that the claimant was not continually disabled for the requisite 12-month period, considering his RFC and the vocational factors relative to his age, education and work experience, at any time as of the alleged onset date of disability through the date of this decision. (R. 36).

9. The claimant was not under a "disability," as defined in the Social Security Act and implementing regulations, at any time as of the alleged onset date of disability through the date of this decision. (R. 36).

## C.  *Application of the Standard*

Based on the ALJ's findings, East survives steps one and two of the sequential evaluation process, because he has not engaged in any substantial gainful activities since his disability onset date, and he has severe impairments (R. 35). However, he does not survive step three, because his severe impairments, when considered individually and/or in combination with others, do not meet the equivalent of a listed impairment (R. 35). This finding, however, merely necessitates an evaluation to determine the claimant's RFC. **20 C.F.R. § 416.920 (2004)**.

In the instant case, the ALJ's assessment of East's RFC resulted in a finding that, "if properly motivated, [he] could perform the exertional demands of a significant range of sedentary work which requires standing and/or walking up to 1-2 hours and/or sitting for 6-8 hours, and lifting/carrying up to 10 pounds frequently." (R. 31). Based on the "evidence of record as a whole, the degree of functional limitation occasioned by the claimant's mental health condition in the broad areas of functioning is as follows:

| | |
|---|---|
| activities of daily living | slight-to-moderate limitation |
| social functioning | slight-to-moderate limitation |
| concentration, persistence and pace | moderate limitation |
| episodes of decompensation | none documented by independent sources |

(R. 33).

East disagrees and contends that the ALJ erred as follows:

1. The ALJ failed to assess his impairments properly as they relate to Listing 5.05 (chronic liver disease) in the listings, **20 C.F.R. 404, Subpt. P, App. 1** (R. 9);

2. The ALJ failed to find that East's obesity was a "severe" impairment (R. 16);

3. The ALJ failed to adhere to the Commissioner's policy concerning obesity by not considering East's obesity as a factor affecting his other impairments or limitations (R. 14);

4. The ALJ posed an inaccurate hypothetical question to the vocational examiner and failed to resolve a conflict between the examiner's opinion and the Dictionary of Occupational Titles ["DOT"]. (R. 18, 19).

5. The ALJ improperly discounted the opinion of East's treating physician (R. 21).

In response, the Commissioner contends that the ALJ acted properly in determining that East's impairments did not meet or equal the relevant listings (Doc. # 17, p. 4), evaluating East's obesity (Doc. # 17, p. 8), questioning the vocational examiner (Doc. # 17, p. 9) and discounting the opinion of East's treating physician. (Doc. # 17, p. 10). With respect to East's argument that the vocational examiner's testimony conflicts with the DOT, the Commissioner maintains that the testimony was accurate. (Doc. # 17, p. 10).

For the reasons discussed below, the court agrees with East's first three contentions.[2]

---

[2] As will become clear *infra*, a decision regarding the vocational examiner's testimony and the treating physician's opinion would be premature. *See infra* Part III.D(2).

D.    *Analysis of Evidence*

**1. The Listing of Impairments**

East argued that his impairments meet or equal listing 5.05(B), which requires the existence of a chronic liver disease coupled with the "[p]erformance of a shunt operation for esophageal varices . . .," and the Commissioner's decision to the contrary is not supported by substantial evidence. **20 C.F.R. § 404, Subpt. P, App. 1, 5.05(B)**.[3] The Commissioner argued that East failed to produce evidence establishing the criteria for meeting or equaling the listing, the ALJ's conclusions are supported by substantial evidence, and the record was fully developed. (Doc. # 17, pp. 4-8).

> A claimant may prove that he is disabled by either (1) *meet*ing the listings or (2) *equal*ing the listings. In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that his condition meets the specific criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. . . . In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

***Wilkinson v. Bowen***, 847 F.2d 660, 662 (11th Cir. 1987) (emphasis in original).

"The burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment." ***Id.*** Moreover, if the claimant contends that his impairment is medically equivalent to a listing, he "must present evidence which describes how the impairment has such an equivalency." ***Id.***

---

[3] East also argued that his impairments meet or equal listings 5.05(E) and (F). The court withholds determination on these matters for the same reasons the court does not address East's other contentions. *See infra* Part III.D(2).

10

Notwithstanding the claimant's burden, when determining whether an impairment is medically equivalent to a listing, the ALJ must consider the medical opinion of one or more designated physicians on an advisory basis. ***Id.***; *see also* ***Stinson* ex rel. *Stinson v. Shalala***, 859 F. Supp. 539, 541 (M.D. Ala. 1994) (citing ***Wilkinson***, 847 F.2d at 662).

East argued that his cirrhosis equals listing 5.05(B), in view of his surgery to insert a shunt to aid the blood flow to his liver. Instead of arguing that East's cirrhosis does not qualify as a chronic liver disease, the Commissioner argues that "the shunt operation was not performed, per se, for the esophageal varices as required by listing 5.05B. It was performed prophylactically to relieve portal hypertension." (Doc. # 17, pp. 4-5).

Initially, the court finds the Commissioner's implicit interpretation of the language in listing 5.05(B) to be narrow beyond reason. The listing requires that the shunt operation be performed "for" esophogeal varices. **§ 404, Subpt. P, App. 1, 5.05(B)**. Apparently, the Commissioner understands this to mean that the purpose of the operation must be to correct or eliminate esophogeal varices, "per se." (Doc. # 17, p. 4). A more reasonable interpretation, however, is that the operation must serve to remedy, in whole or in part, a condition associated with—either contributing to or resulting from—esophageal varices.

On 19 November 2001, East was diagnosed with a "+1 esophageal varices." (R. 485). Dr. K. Michael Michaelides ["Michaelides"] described the condition the next day as being "compatible with portal gastropathy." (R. 480). As the ALJ noted (R. 25 n.9), an exam on 11 June 2002 revealed that East had "Esophageal varices Grade B." (R. 315). On 2 July 2002, Dr. A.D. Patel ["Patel"] described the varices as "enlarging." (R. 308).

11

A letter dated 14 August 2002 summarily describes the reason for the shunt operation:

> [Illegible] is scheduled for the following surgical procedure: Portal Caval Shunt and Retro-[illegible]-oneal Lymph Node Biopsy on Monday, August 19, 2002. This is done to relieve [illegible] hypertension in the Portal System going to his Liver. *The portal hypertension puts him at increased risk for bleeding from the veins in his esophagus and stomach.* This procedure should take - 3 hours to complete and he may stay in the Surgical Intensive Care Unit overnight. He can expect to be in the hospital for approximately 5-7 days. [Illegible] usual recuperation time is 4-6 weeks.

(R. 474) (emphasis added).

A report described the procedure itself as follows:

> The portal vein was dissected free. . . . The portal vein was cleared off. We then kocherized the duodenum and cleaned off the upper cava. A Satinsky clamp was placed. We sewed a 10 mm ribbed Gore-Tex graft to the cava which was partially occluded with the Satinsky clamp. We then took the clamp off and flushed the shunt with heparinized saline and then clamped the shunt itself. We then beveled the upper end of the shunt after it was cut to the appropriate length and used the Satinsky in the portal vein. This was done once again with 6-0 Prolene. The clamps were taken off and we reestablished flow to the liver.

(R. 453). A post-operative report dated 6 September 2002 stated that the procedure described above was intended "to decrease the risk of variceal bleeding." (R. 472).

The foregoing evidence buttresses the conclusion that East met his burden of producing evidence establishing that his impairment met the criteria of listing 5.05(B). However, if the Commissioner's determination is supported by substantial evidence, the court must affirm the ALJ's decision. ***Cornelius v. Sullivan***, 936 F.2d 1143, 1145 (11th Cir.

1991).

The ALJ noted that an exam performed on 11 June 2002 revealed esophageal varices. (R. 25 n.9), and he described a surgery that East underwent during which a "prophylactic shunt was also placed in the portal vein to improve blood flow to the liver." (R. 25). Nevertheless, in a cursory fashion, the ALJ determined that "no treating and/or examining physician determined that the claimant has an impairment, or combination of impairments, that either meets or equals in severity the criteria of any impairment, or combination of impairments, specified in the Listing of Impairments. Particular attention was given to Listing[] . . . 5.05 (liver disease) . . .." (R. 22 n.2).

The ALJ's conclusion is not supported by substantial evidence. More accurately, it contradicts all of the evidence relating to East's esophogeal varices and the shunt operation. The evidence in the record leaves little doubt that East's shunt operation was for his esophageal varices. Therefore, the Commissioner's decision should be reversed pursuant to sentence four of 42 U.S.C. § 405, and East should be "[c]onsider[ed] under a disability for 3 years following surgery . . .." **20 C.F.R. § 404, Subpt. P, App. 1, 5.05(B)**.

### 2. East's Obesity

East raises two arguments regarding his obesity. He contends that

- the ALJ should have determined that East's obesity qualified as a severe impairment (Doc. # 14, p. 16); and

- the ALJ failed to factor East's obesity properly into his evaluation of his other impairments and limitations (Doc. # 14, p. 15).

*a.     General Standards for Evaluating Obesity in Disability Determinations*

Social Security Ruling 02-01p governs the evaluation of obesity for disability claims.[4]

> When establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height.  Thus, in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner.  However, if there is evidence that indicates that the diagnosis is questionable and the evidence is inadequate to determine whether or not the individual is disabled, we will contact the source for clarification, using the guidelines in 20 C.F.R. 404.1512(e) and 416.912(e).

Soc. Sec. Rul. 02-01p, 65 Fed. Reg. 31039 (May 15, 2000), *available at* 2000 WL 628049 at *3.

Upon determining that a claimant is obese, an ALJ must consider obesity in determining whether :

   1.  The individual has a medically determinable impairment . . .;
   2.  The individual's impairment(s) is severe . . .;
   3.  The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings . . .;
   4.  The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy . . ..

*Id.* at *3.

In addition, the ALJ may find that the individual is disabled based on obesity alone

---

[4]Although East correctly notes that Social Security Rulings are binding precedent, pursuant to 20 C.F.R. § 402.35(b)(1), East erroneously cites to ruling 00-3p as the controlling precedent. (Doc. # 14, p. 14 n.86). Ruling 02-01p explicitly supercedes ruling 00-3p.  Soc. Sec. Rul. 02-01p.

14

if the claimant's obesity "medically equals a listing."[5] "We may also find . . . that the obesity results in a finding that the individual is disabled based on his or her residual functional capacity, age, education, and past work experience." *Id.* at *4.

### b. *The ALJ's Determination that East's Obesity is not Severe*

> As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . . We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning. . . . Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities . . . .
>
> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

*Id.*; *see also* **Brady v. Heckler**, 724 F.2d 914, 920 (11th Cir. 1984) (establishing the standard in this circuit for determining whether an impairment is not severe).

The ALJ noted that East's treating physicians had described him as being obese. (See

---

[5]At one time, obesity was included by itself among the listings. **Soc. Sec. Rul. 02-01p at *1**. Although that no longer is the case, ruling 02-01p discusses several ways obesity can meet a listing. *Id.* at *5.

R. 24, 29 n.2). He then made the following finding in a footnote:

> The medical records contain references to obesity. Effective October 25, 1999, the former Listing 9.09 of the Listing of Impairments related to obesity was deleted. (See 64 Fed. Reg. 46122-46129). In the context of the present record, the consideration of obesity is made under Listing 1.00 (1.00Q) related to the muculoskeletal system. There was no clinical confirmation of severe limitation in functional activity related to obesity.

(R. 29 n.12).[6] The ALJ did not otherwise mention East's obesity.

The court agrees with East that the ALJ failed to adhere to the proper legal standard for determining whether East's obesity constituted a severe impairment. Whether East's obesity is severe is determined at step two of the sequential analysis. *See* **20 C.F.R. § 404.1520(b)**; *see also* ***McDaniel v. Bowen***, 800 F.2d 1026, 1031 (11th Cir. 1986).

---

[6]It makes no difference that East did not list obesity as a specific impairment or, as the Commissioner notes in her brief, failed to mention obesity at his hearing. ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1198 (M.D. Ala. 2002). Despite the implication that may arise from the ALJ's cursory determination, the record clearly establishes that East is extremely obese. (R. 233, 307, 321, 323, 334, 500). East is sixty- six inches tall. (R. 135, 334). He was weighed several times between September 2001 and June 2003, approximately two months after the hearing before the ALJ. (R. 233, 237, 240, 306, 308, 334, 443, 560). During this period, his weight varied from a low of 247 pounds (R. 443) to a high of 263 pounds (R. 608). According to charts published by the National Institutes of Health ["NIH"], to which ruling 02-01p refers as setting the standards for the determination of obesity, East's Body Mass Index ["BMI"] ranged from 40 to between 42 and 43. *See* **Soc. Sec. Rul. 02-01p at \*2**; National Institutes of Health, Body Mass Index Table, http://www.nhlbi.nih.gov/guidelines/obesity/bmi_tbl2.htm. Notably, in June 2003 East's weight was 260.5 (R. 560), which translates to a BMI of 42. *See id.* Referring to the NIH guidelines, ruling 02-01p notes:

> The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. *Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments*, *includes BMIs greater than or equal to 40*. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.

**Soc. Sec. Rul. 02-01p at \*2** (emphasis added).

The ALJ's opinion omits analysis of East's weight or obesity. The agency's Physical Residual Functional Capacity Assessment, dated 9 January 2002, also failed to mention either East's weight or his obesity. (R. 272- 279). On 14 January 2002, East weighed 258 pounds, yielding a BMI of between 41 and 42. (R. 306). The record also includes a notation in East's records from one Dr. Lake which describes him as "Very Obese." (R. 585).

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would *clearly* not be expected to interfere with the individual's ability to work . . . . Clamant need show only that [his] impairment is not so slight and its effect is not so minimal.

*McDaniel*, 800 F.2d at 1031 (emphasis added).

As predicate for his conclusion, the ALJ mentions only the listings and refers to East's functional capacity, neither of which are relevant to the question of whether East's obesity constituted a severe impairment, especially when considered in combination with his other, well-documented, impairments.

Thus, the ALJ's application of the incorrect legal standard warrants reversal. **Lamb v. Bowen**, 847 F.2d 698, 701 (11th Cir. 1989). The record is clear that East's obesity, which, in accordance with the standards set by the NIH and ruling 02-01p, is extreme, cannot be considered to create only a minimal interference with East's ability to work. Therefore, remand is not necessary to determine whether East's obesity is severe. Remand is nonetheless necessary to allow the ALJ to complete the sequential evaluation as it relates to this impairment.

*c. East's Obesity in Relation to his Other Impairments and his RFC.*

Ruling 02-01p also requires the ALJ to consider East's obesity as a factor in evaluating the impact of East's other impairments, both individually and collectively, *see*

**Soc. Sec. Rul. 02-01p at *5**,[7] as well as East's RFC. *Id.* at * 6.[8]  By failing to do this, the

---

[7]   We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.  For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of the impairments meets the requirements of a listing.  This is especially true of muculoskeletal, respiratory, and cardiovascular impairments.  It may also be true for other coexisting or related impairments, including mental disorders.

Soc. Sec. Rul. 02-01p at *5.

[8]   Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers.  The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day.  Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p . . ., our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

\*\*\*

***As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.***

Soc. Sec. Rul. 02-01p at *6, 7 (emphasis added).

18

ALJ disregarded binding precedent.[9]  **20 C.F.R. § 402.35(b)(2)**.  The Commissioner's decision should therefore be reversed and remanded to the ALJ with instructions to comply with ruling 02-01p by factoring East's obesity into every evaluative step concerning each of East's relevant impairments as well as his RFC.[10]

## IV.  CONCLUSION

For the aforementioned reasons, it is the RECOMMENDATION of the Magistrate Judge that:

1) The Commissioner's decision that East's impairment does not meet or equal a listing, specifically listing 5.05(B) of 20 C.F.R. § 404, Subpt. P, App. 1, be REVERSED and that East shall be awarded benefits in accordance with listing 5.05(B), such award to be retroactive beginning 19 August 2002;

2) The Commissioner's decision that East's obesity is not a severe impairment be REVERSED and REMANDED for further proceedings consistent with this opinion and ruling 02-01p;

3) The Commissioner's decision with respect to each of East's impairments and his

---

[9]Neither the footnote quoted from the ALJ's opinion nor his casual reference to Gillett's description of East's abdomen as "obese" (R. 24) are sufficient to comply with the letter or spirit of ruling 02-01p.  It is *analysis,* not *acknowledgment,* that satisfies the standard.

[10]Of course, this necessarily requires the ALJ to consider East's obesity with respect to the other listings that East claims his impairments meet or equal.  The ALJ's hypothetical question to the vocational examiner and his assessment of East's treating physician's opinion will also naturally be affected.  The court does not intend to suggest that the ALJ's revised assessment will or should have a different outcome.

RFC be REVERSED and REMANDED for further proceedings consistent with this opinion and ruling 02-01p.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before 21 April 2005. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*).

DONE this 7th day of April, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE