IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ARLEY EAST,                          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        3:04cv624-M
                                     )        [W/O]
JO ANNE B. BARNHART,                 )
Commissioner of Social Security,     )
                                     )
            Defendant.               )

**ORDER ON MOTION**

This case is now before the court on the Plaintiff's motions for attorney fees and costs under the Equal Access to Justice Act ["EAJA"], 28 U.S.C. §§ 1920, 2412 (2004) (Docs. # 25, 26).  The Commissioner responded to the motion without objection and requested an order awarding the amount sought.  (Doc. # 30).

Having reviewed the parties' submissions, the court concludes that the plaintiff is a prevailing party within the meaning of section 2412, the government's position was not substantially justified, and the plaintiff's application for fees was timely filed.  The court does not agree with the plaintiff's calculation of attorney fees, however.

**DISCUSSION**

The plaintiff has requested attorney fees in the amount of $5,281.55 for 34.3 attorney hours, which represents an hourly rate of $153.98.  (Doc. 26, ¶ 9).  This rate reflects a base

of $125 per hour, which is the maximum rate allowed under section 2412(d)(2)(A), adjusted in accordance with the Consumer Price Index ["CPI"] for March 2005. *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Indexes*, http://www.bls.gov/cpi/home.htm.

Calculating attorney fees under the EAJA in the Eleventh Circuit requires the court to determine first whether the "prevailing market rates for the kind and quality of the services furnished", which is how the EAJA defines what is a reasonable attorney fee, exceed the statutory ceiling of $125. § 2412(d)(2)(A); **Meyer v. Sullivan**, 958 F.2d 1029, 1033 (11th Cir. 1992) (outlining a two-step process). Evidence provided by the plaintiff establishes that the prevailing market rate for his attorney's services is well above the statutory ceiling and well above the amount sought by the plaintiff.

The defendant has neither provided evidence to the contrary nor objected, and the court takes judicial notice of opinions that have approved similar fees in this area. *See*, *e.g.*, **Thornton v. Barnhart**, No. 03-cv-683 (M.D. Ala. May 3, 2005) ($191); **Ballard v. Barnhart**, 329 F. Supp. 2d 1278 (N.D. Ala. 2004) ($147.63). Therefore, the court finds that the hourly rate of $153.98 is reasonable in this case.

"The second step, which is needed only if the market rate is greater than [$125] per hour, is to determine whether the court should adjust the hourly fee upward from [$125] to take into account an increase in the cost of living or a special factor." **Id.**[1] The court finds

---

[1]At the time of the *Meyer* opinion, the EAJA imposed a $75 per hour ceiling.

that the increase in the cost of living since the EAJA was amended in 1996 to increase the fee cap to $125 merits an inflationary adjustment, and the court now turns its attention to the method of calculating the adjustment.

The plaintiff suggests that the adjustment should be based on the CPI for March 2005.[2]  This results in an upward adjustment of 23.19 percent, which raises the $125 ceiling to $153.98, the plaintiff's figure.[3]  All of the Circuit courts outside the Eleventh Circuit which have addressed this issue have determined that basing an inflationary adjustment on the most recent CPI without regard to the time when services were actually provided imposes upon the government a charge for delayed payments, which is tantamount to interest and is impermissible absent an express legislative waiver.[4]  *Sorenson v. Mink*, 239 F.3d 1140, 1148-49 (9th Cir. 2001); *Kerin v. U.S. Postal Service*, 218 F.3d 185, 194 (2d Cir. 2000); *Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 710-714 (D.C. Cir. 1997); *Marcus v. Shalala*, 17 F.3d 1033, 1038-40 (7th Cir. 1994); *Perales v. Casillas*, 950 F.2d 1066 (5th Cir. 1992); *Chiu v. U.S.*, 948 F.2d 711, 719-22 (Fed. Cir. 1991).

---

[2]The plaintiff and the court both rely on the CPI for "All Urban Consumers" with a base period of 1982-1984. *See also Dewalt v. Sullivan*, 963 F.2d 27, 28- 30 (3d Cir. 1992) (explaining the rationale underlying using the CPI reflecting the cost of living as opposed to the CPI that more accurately reflects the market value of legal services); *Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir. 1992) (same).

[3]To get this figure, subtract the CPI for the base year ["base CPI"], 1996 (the year the statutory ceiling was changed from $75 to $125), from the CPI for the period the court uses as the appropriate measure for adjustment ["adjustment CPI"] during which services were performed.  In this case, the plaintiff used the figure from March 2005, which was 193.3.  The average CPI for 1996 was 156.9, leaving a difference of 36.4 index points.  The difference is then divided by the base CPI and then multiplied by 100 to arrive at the percent by which the CPI increased or decreased (36.4/156.9 x 100 = 23.19).

[4]The EAJA does allow for imposition of interest in the event the United States appeals an attorney fee award. 28 U.S.C. § 2412(f).  The interest accrues "from the date of the award through the day before the date of the mandate of affirmance" of the award.  *Id.*

3

Each of these courts relied on the Supreme Court case of *Library of Congress v. Shaw*, 478 U.S. 310 (1986), to reach this conclusion.  The six-justice opinion in *Shaw* summarized the "no-interest rule" by stating that "interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." *Shaw*, 478 U.S. at 311.  The rule "permit[s] the Government to occupy an apparently favored position, by protecting it from claims for interest that would prevail against private parties." *Id.* at 315-16 (internal quotations and citations omitted).

The district court in *Shaw* had determined that an award of attorney fees under Title VII should be adjusted "to compensate counsel for the delay in receiving payment for the legal services rendered." *Id.* at 313.  Doing so, the lower court held,

> is appropriate because the hourly rates used for the lodestar represent the prevailing rate for clients who typically pay their legal bills promptly, whereas court-awarded fees are normally received long after the legal services are rendered.  An increase for delay is designed to compensate the attorney for the money he could have earned had he been paid earlier and invested the funds.

*Id.*[5]  The D.C. Circuit determined that the no-interest rule would preclude such an award because "compensation for delay" was the "functional[] equivalent" of interest.  *Id.* Nevertheless, the court interpreted Title VII as an express waiver of sovereign immunity for such a charge. *Id.*

The Supreme Court disagreed on the latter point.  Addressing first the contention that

---

[5]Notably, the district court adjusted the fee beginning at the point the court had determined the case "should have ended" and not simply for the period during which litigation was pending. *Shaw*, 478 U.S. at 313.

Title VII expressly waived sovereign immunity,[6] the Court instructed:

> In analyzing whether Congress has waived the immunity of the United States, we must construe waivers *strictly in favor of the sovereign*, *see* **McMahon v. United States**, 342 U.S. 25, 27 (1951), and not enlarge the waiver *beyond what the language requires*. The no-interest rule provides an *added gloss of strictness* upon these usual rules:
>
> > "[T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into *affirmative statutory or contractual terms*. The consent necessary to waive the traditional immunity must be express and it must be strictly construed." **United States v. N.Y. Rayon Importing Co.**, 329 U.S. [654] at 659 [(1947)].

**Shaw**, 478 U.S. at 318 (emphasis added) (parallel citations omitted); *see also* 42 U.S.C. § 2000e-5(k) (2004). With this in mind, the Court held that Title VII did not waive the United States' immunity from interest charges. *Id.* at 320-21.

The **Shaw** Court then provided insight into the rationale for concluding that an adjustment for delayed payment constitutes an interest charge.

> "[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no interest rule applies to it." **United States v. Mescalero Apache Tribe**, 518 F.2d 1309,

---

[6] The argument relied upon the statute's language imposing liability for "costs the same as a private person", describing the attorney fees to be awarded as part of "costs", and requiring them to be "reasonable". **Shaw**, 478 U.S. at 317-18.

1322 (1975).

Respondent claims, however, that interest and delay represent more than mere semantic variations. Interest and a delay factor, according to respondent, have distinct purposes: the former compensates for loss in the use of money, while the latter compensates for loss in the value of money.

We are not persuaded. Interest and a delay factor share an *identical function. They are designed to compensate for the belated receipt of money.* The no-interest rule has been applied to prevent parties from holding the United States liable on claims grounded on the belated receipt of funds, even when characterized as compensation for delay. *See **United States v. Sherman***, 8 Otto 565, 568 (1879). Thus, whether the loss to be compensated by an increase in a fee award stems from an opportunity costs *or from the effects of inflation*, the increase is prohibited by the no-interest rule. *See **Saunders v. Clayton***, 629 F.2d 596, 598 (9th Cir. 1980) ("In essence, the inflation factor adjustment is a disguised interest award."), *cert. denied*, 450 U.S. 980 (1981); ***Blake v. Califano***, 626 F.2d 891, 895, and n.9 (D.C. Cir. 1980).

***Shaw***, 478 U.S. at 321-22 (parallel citations omitted) (citations to the record omitted).[7]

The relevant EAJA provision states,

The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

Applying ***Shaw*** in the context of EAJA fees, the circuit courts of appeals cited ***supra***

---

[7]At least one of the courts (cited *supra*) relying on ***Shaw*** for this issue had previously recognized that an amendment to Title VII superceded ***Shaw***'s holding that Title VII does not constitute a waiver of immunity from interest charges. ***Estate of Reynolds v. Martin***, 985 F.2d 470, 472 (9th Cir. 1993).

held that, while the language of the relevant EAJA provision allows for an inflationary adjustment it does "not waive the government's sovereign immunity with respect to interest." *See also* **U.S. v. Aisenberg**, 358 F.3d 1327, 1346 n.28 (11th Cir. 2004) (stating that each of the circuit court cases cited *supra* "are persuasive" and applying their rationale in a case involving the Hyde Amendment, which allows for an award of attorney fees in criminal cases, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997))**.**

Those courts also held that adjustments for inflation must correlate in some way to the period during which services were performed and may not be based simply on the most recent CPI.[8]  This court has concluded that the Eleventh Circuit's rationale should be followed, i.e., these cases are persuasive; thus, the court adopts these holdings as its own.

---

[8]The Seventh Circuit perhaps best describes **Shaw's** application to EAJA fee awards:

> In **Shaw**, the Court observed that an interest rate reflects two separate factors, the real opportunity cost of capital and the inflation rate.  The Court held that principles of sovereign immunity generally dictate that neither of these elements may be awarded against the United States, regardless of how the award might be designated.  An exception to this rule allows for such awards where the government has consented.  However, because waivers of sovereign immunity are to be strictly construed in favor of the government, the exception is not applicable unless the consent is express and unambiguous.  By indexing attorney's fees at current rates, the district court's award included interest.  *Although the EAJA provides for the award of post-judgment interest, 28 U.S.C. § 2412(f), its provisions for a cost of living adjustment is not an explicit waiver of sovereign immunity that would authorize a district court to award pre-judgment interest to compensate for delay.*  Plaintiffs argue that the EAJA's provision for an upward adjustment to compensate for an increase in the cost of living constitutes an explicit waiver of the inflation component interest.  We agree, but only to the extent that the clause serves as the statute's built-in mechanism for automatically updating itself, ensuring that the [$125] per hour cap will not be eroded by inflation.  We reach this conclusion strictly construing the language in favor of the government, as **Shaw** requires.  Nothing in the remainder of the EAJA authorizes fees to be indexed at current rates regardless of when they were incurred.

*Marcus*, 17 F.3d at 1038-39 (emphasis added).

While the courts have thus defined a clear violation of the no-interest rule, they have not yet established the proverbial boundary beyond which an authorized inflationary adjustment becomes an impermissible interest charge. Nevertheless, and notwithstanding their reverence for *Shaw*, these courts (not including *Aisenberg*, which did not discuss the issue beyond the relevant holding of the other circuits) do suggest, without detailed explanation, that the CPI for the year in which services were rendered is the appropriate figure to use. *See*, *e.g.*, *Sorenson*, 239 F.3d at 1149; *Kerin*, 218 F.3d at 194; *Perales*, 950 F.2d 1076.[9]

Some courts in the Eleventh Circuit have applied this averaging method, which as a practical matter results in charging the United States a different rate for each month of litigation in a particular case based on a cumulative annual average CPI. *U.S. v. Adkinson*, 256 F. Supp. 2d 1297, 1313 (N.D. Fla. 2003) (addressing a claim for attorney fees under the Hyde Amendment); *Gates v. Barnhart*, 325 F. Supp. 2d 1342 (M.D. Fla. 2002). As a result, the rate the United States must ultimately pay varies   - more often than not, increases - with time. The methods endorsed, therefore, do little if anything to eliminate the offense driving the principled refusal simply to apply the current CPI.

In holding that the most recent CPI was the inappropriate measurement, the *Perales* court stated:

---

[9] The *Chiu* court suggested one possible alternative: establishing "a single mid-point inflation adjustment factor applicable to services performed before and after that midpoint." *Chiu*, 948 F.2d at 722 n.10. The court finds this method unsatisfactory for the same reasons it takes issue with the averaging method.

> We find no language in the EAJA authorizing fees at current adjusted rates for all hours whenever expended.  The narrowest reasonable construction of the cost-of-living provision in the EAJA leads us to conclude that this was an attempt to allow the statute to be self-updating in light of he modern realities of inflation.  This purpose is accomplished through the award of historic rates; anything more treads impermissibly across the line and is tantamount to interest.

*Perales*, 950 F.2d at 1076.   The court continued:  "Accordingly, following the teachings of *Shaw*, we conclude that cost-of-living compensation of attorneys under the EAJA merely for the delay in payment is a prohibited award of interest against the United States."  *Id.* at 1077.

Similarly, the Ninth Circuit stated that calculating the rate using the current CPI "adjusts the fee to account for increases in the cost of living between the time that the fee was earned and the time that the government pays the fee.  Such an adjustment compensates a lawyer for a delay in payment and is the functional equivalent of prejudgment interest." *Sorenson*, 239 F.3d at 1148.

This is as true when inflationary adjustments are made using the most recent CPI as when they are made using a variable (average) annual CPI regardless of when during the year those services were provided.  The fact that the fluctuation is represented by an annual average does not eliminate the fact that the fee charged to the United States one month is different   - most likely higher -  the next month due to nothing more than the passage of time.  To illustrate, in January 2004, the CPI was 185.2.  Using the rate of $125 per hour and adjusting for inflation using the January CPI, the United States would pay $147.50 per hour. Relying on the 2004 annual average CPI of 188.9, however, the rate charged would be

9

$150.50, an increase of two percent.

To be sure, in the context of a single case, the suggestion that an imposition of a two percent, $3 per hour, charge to the United States government is significant enough to cause concern may be viewed as excessively scrutinizing. But, the prohibition against charging the United States prejudgment interest does not depend upon the charge's fiscal impact.[10] Nor does it allow for a balancing of interests.

A table provided in ***Adkinson***, a case arising in the Northern District of Florida,

---

[10]The impact in an individual case may seem minor, particularly in cases involving review of an administrative decision, which, more often than not, are resolved within a year. On a broader scale, however, the picture is much different.

> From its inception in fiscal year 1982 through fiscal year 1994 (the last year central reporting of governmentwide data was required), more than 6,200 applicants were awarded about $34 million under EAJA's administrative and judicial processes for reimbursement of attorneys' fees and related expenses. Of the $34 million, applications involving the Social Security Administration (SSA) accounted for at least 83 percent of the claims granted and 48 percent of the amounts awarded.

U.S. General Accounting Office, Health, Education, and Human Services Division, *Equal Access to Justice Act: Its Use in Selected Agencies*, Report No. B-278335 (Jan. 1998), *available at* http://archive.gao.gov/paprpdf1/159815. pdf. Furthermore, the proper basis for calculating inflationary adjustments may have an even broader impact. "As of December 1996, approximately 180 other federal laws provide for fee shifting." *Id.* at 8 n.6. From 1993 to 1994, the number of EAJA awards granted by the courts rose dramatically from 232 to 2,179, and the total fees for those years rose from $1 million to $8.2 million. *Id.* at 14. "The large increase in applications and awards in fiscal year 1994 was attributed to *a change in data collection methods.* Most of the increase was caused by SSA cases." *Id.* at 14 n.c. Thus, in all likelihood, the data from the previous years are inaccurate.

An earlier report details "data on the number of cases and amount of plaintiff attorneys' fees awarded over $10,000 against nine federal agencies, for cases closed during fiscal years 1993 and 1994." U.S. General Accounting Office, General Government Division, *Private Attorneys: Selected Attorneys' Fee Awards Against Nine Federal Agencies in 1993 and 1994*, Report No. B-259798 (Oct. 1995), *available at* http://www.gao.gov/archive/ 1996/gg96018.pdf. "More than 27 percent (123) of the reported awards over $10,000 for fiscal years 1993 and 1994 against the nine agencies were authorized under the [EAJA] . . . . In addition, the highest amount of attorneys' fee awards against the nine agencies were authorized under the [EAJA] for both fiscal years, totaling over $9.4 million." *Id.* at 13. Notably, the amount awarded in 1994 under 28 U.S.C. § 2412, $5.2 million, was nearly double the amount awarded in 1993, $2.8 million (The report also provided numbers under the EAJA's provisions found in 5 U.S.C. § 504(a)(1), which is inapplicable to this case. ). *Id.* at 14. It should be noted that the figures quoted in this paragraph do not include fees awarded for SSA cases. "HHS [U.S. Department of Health and Human Services] did not provide data on attorneys' fee awards over $10,000 for Social Security Administration cases. It said that attorneys' fee awards were paid in thousands of cases, and it would be too burdensome to search these cases to find those that met our criteria." *Id.* at 1 n.2.

illustrates precisely how the averaging method imposes a penalty against the United States for the delay in payment.  256 F. Supp. 2d at 1313.[11]  Another approach illustrates how the averaging method not only imposes a charge for delayed payment but also results in a unique form of legal agreement not likely to be easily accepted by most private clients.  Typically, in situations involving hourly fee agreements, an attorney bills a client for time spent working at an hourly rate that was agreed upon at the outset of the representation.  Framing the current situation in those terms, the hourly rate would be billed to and paid by a third party payor, the United States, on a monthly basis.  Because typical attorney-client contracts for single-purpose representation do not provide for inflationary adjustments, the same hourly rate would be charged and paid even though continual fluctuations in the economy (most likely inflationary) alter (most likely reduce) the value of the hourly fee.  This stands in stark contrast to the "arrangement" resulting from the averaging method, wherein the charge to the United States varies, generally increasing,[12] with time and the most readily available justification for the changing rate is a delay in payment.

Consequently, while theoretically simple to apply, the averaging method nonetheless risks (though it does not necessitate), and in most cases will result in, an impermissible interest charge to the government.  Therefore, **_Shaw_** requires a different approach.

---

[11]Neither of the district courts in the Eleventh Circuit applying the averaging method discussed _Shaw_ or the interest resulting from their method.  _See generally_ **_Adkinson_**, 256 F. Supp. 2d 1297; **_Gates_**, 325 F. Supp. 2d 1342.

[12]Since 1996, the CPI has risen every year.  In the 112 month-to-month periods beginning in January 1996, the CPI has decreased a total of only 17 times.  United States Department of Labor, Bureau of Labor Statistics, _Consumer Price Indexes_, http://www.bls.gov/cpi/home.htm.

Basing inflationary adjustments on the CPI at the time counsel agreed to represent the prevailing party in a particular case guarantees that the United States will not be charged interest. In addition, it most closely replicates ordinary hourly fee agreements,[13] and because the EAJA does not supersede attorney-client contracts establishing mutually agreed-upon methods for calculating the reasonable charge for an attorney's services, this method will cause little if any hardship and will actually reduce the unwelcome surprise that may accompany a period of significant deflation.[14] The time-honored judicious values of accuracy, consistency and predictability will be well-served.

Therefore, the court will utilize the CPI for June 2004, which is the date of the earliest accounting for plaintiff's counsel's time. The CPI for that month was 189.7, a 20.9% increase from 1996. Consequently, plaintiff's counsel's hourly rate will be $151.13, and the total fee to be awarded is $5,183.76, a difference of $97.79 from the amount originally sought.

Plaintiff also seeks costs in the amount of $150 to reimburse him for the filing fee -

---

[13]A 2001 government report states that "59 agencies . . . reported awarding 4,567 contracts for legal services during fiscal year 1991." Letter from Paul L. Jones, Director, Justice Issues, U.S. General Accounting Office, to Rep. William D. Delahunt (D-Mass.) 1 (July 3, 2001) *available at* http://www.gao.gov/new.items/ d01887r.pdf. In fiscal years 1999, 2000 and 2001, the Department of Justice ["DOJ"] and the Administrative Office of the United States Courts paid private attorneys the "maximum hourly fee of $125" to represent federal employees, including judicial officers, when the DOJ was unable to provide representation. *Id.* at 2. No mention is made of cost of living adjustments. *Id.*

[14]Incidentally, the Eleventh Circuit did not object to a district court's decision not to allow for an inflationary adjustment to attorney fees accumulated over five years (1998-2003). "The district court stated that '[n]o marked increase in the cost of living has occurred since 1998." *U.S. v. Aisenberg*, 358 F.3d 1327, 1342 n.23 (11th Cir. 2004). The annual average CPI for 1998 was 163 and for 2003 was 184, an increase of 12.9%. While this does not drive the court's reasoning, and the court does not suggest that a 12.9 percent loss in the value of money is not "marked", it does undermine somewhat any argument that a plaintiff will suffer a hardship as the result of the method adopted by the court.

an appropriate request under the EAJA.[15]  28 U.S.C. §§ 1920(1), 2412(a)(1), 2412(d)(1)(A).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of this court that the plaintiff's motion be GRANTED in the amount of $5,183.76 for attorney fees and $150 for costs.

DONE this 18th day of July, 2005.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE

---

[15]The court declines the government's invitation to specify that the filing fee award be paid from the Judgement Fund established in 31 U.S.C. § 1304 (2004). Section 2412 provides for an award of costs as defined by section 1920, which includes filing fees. §§ 2412(a); 1920(1). Defendant provided no legal authority to the court to guide the court in this matter (including a citation to the provision establishing the judgment fund), and research has revealed no authority for this court to instruct the co-equal branches of government how and where to appropriate funds for the payment of fees, expenses and costs. Materials reviewed for this opinion indicate that the executive branch has implemented an internal procedure for administering the Judgment Fund. *See* U.S. General Accounting Office, General Government Division, *Private Attorneys: Selected Attorneys' Fee Awards Against Nine Federal Agencies in 1993 and 1994*, *supra* note 10, at 24 ("The Department of Justice and other agencies notify us of awards owed under certain judgments and settlements that are to be paid by the Judgment Fund. We are responsible for certifying payments from the Judgment Fund.") (These duties are now carried out by the Government Accountability Office. *See* 31 U.S.C. §§ 701 *et seq.* (2004)). In the context of the case before the court, where the government obtains the money to pay the filing fee is simply not a matter subject to a judicial determination. The court offers no opinion on the applicability of the Judgment Fund or the propriety of the procedure for administering it. To aid the administration, however, the court distinguishes between those amount awarded for fees, expenses and costs.